IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HUGO A. VILLANUEVA,

     **Plaintiff,**

     v.                                 **CASE NO. 25-3163-JWL**

JOHNSON COUNTY DISTRICT
ATTORNEY'S OFFICE, et al.,

     **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis. On October 8, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 6) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC. Plaintiff was also given the opportunity to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 8). The Court's screening standards are set forth in the MOSC.

## I. Nature of the Matter before the Court

Plaintiff's original Complaint alleged that he was charged as an adult in his state criminal case. (Doc. 1, at 2.) Plaintiff alleged that he did not commit the crime, and Johnson County and the State of Kansas did not have jurisdiction to prosecute and convict him. *Id.* Plaintiff alleged that he was sent to prison as a child and has suffered from horrible violence resulting in irreversible psychological damage and severe PTSD. *Id.* In his original Complaint, Plaintiff named the Johnson County District Attorney's Office and the State of Kansas as defendants, and sought $1,000,000,000,000 in damages. *Id.* at 7.

The Court advised Plaintiff in the MOSC that if he is asserting an Eighth Amendment claim based on his conditions of confinement while in the custody of the Kansas Department of Corrections ("KDOC") serving his sentence in his 2007 state criminal case, the claims appear to be barred by the applicable statute of limitations and he has failed to name any KDOC staff or officials as defendants.  The Court also advised Plaintiff in the MOSC that his only named defendants in his original complaint—the Johnson County District Attorney's Office and the State of Kansas—are entitled to Eleventh Amendment immunity from his claim for damages.

In his Amended Complaint, Plaintiff continues to allege that he was charged as an adult for a crime he did not commit and that due to the incompetent attorneys, court, and prosecutorial errors, his protections and rights as a juvenile were violated.  (Doc. 8, at 2.)

As Count I of his Amended Complaint, Plaintiff alleges a due process violation based on the state court's lack of subject matter jurisdiction in his state criminal Case No. 07CR2866. (Doc. 8, at 6.)  Plaintiff alleges that he explained his true name and age to two different judges presiding over the case since September 30, 2007. *Id.* at 7.  As Count II, Plaintiff alleges a violation of K.S.A. § 38-2347, citing *State v. Mayfield*, 241 Kan. 555, 561 (1987). *Id.* at 6.  Plaintiff alleges that the state prosecutor failed to protect Plaintiff's rights pursuant to *State v. Breedlove* and *State v. Mayfield*, by continuing to prosecute Plaintiff as an adult. *Id.* at 7.  As Count III, Plaintiff alleges "constitutional right to life, freedom from cruel and unusual punishment, fundamental fairness, due process, and equal protections." *Id.* at 15 (punctuation added).

Plaintiff's Amended Complaint names the following defendants:   Phile G. Stein, Prosecuting Attorney; Christopher Yotz, Retained Attorney; Johnson County Police Department; Shawnee County Police Department; Karen Ebmeier, Johnson County Public Defender; Johnson County District Court; Tom Dyche, Detective; Liz Grace-Meli, Probation Officer; and the Johnson

County Probation Office.    Plaintiff seeks $1,000,000,000,000 in damages.  *Id*. at 16.  Plaintiff

attaches over 300 pages of exhibits to his Amended Complaint.  (Doc. 8–1.)

## II. DISCUSSION

### 1. Defendants

#### A. Prosecuting Attorney

Plaintiff names the prosecuting attorney as a defendant.  "[C]ounty district attorneys work

for the state, not the county."  *Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1236 (D. Kan. 2016)

(citing K.S.A. § 22a-101(a)[1] (stating the district attorney is the "executive officer of the judicial

district in which he is elected" and "in no event shall said district attorney be deemed an officer of

any county"); *Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1347 (D. Kan.1994)

(holding that "county district attorneys are officers of the state," to which the Eleventh Amendment

gives them immunity from suit, unlike county officers)).

In addition, prosecutors are absolutely immune from liability for damages in actions

asserted against them for actions taken "in initiating a prosecution and in presenting the State's

case."  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  The Supreme Court has held that

prosecutors enjoy absolute immunity "for their conduct in 'initiating a prosecution and in

presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase

of the criminal process.' "  *Neighbors v. Lawrence Police Dep't*., 2016 WL 3685355, at *9 (D.

Kan. July 12, 2016) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*,

424 U.S. 409, 430, 431 (1976)).  "This prosecutorial immunity is limited, however, to actions that

---

[1] The statute establishes the office of district attorney for the state's judicial districts 3, 10, 18 and 29, and abolishes the office of county attorney for those judicial districts.  K.S.A. § 22a-101(a) and (b).  Those judicial districts are for the following counties:  3rd Judicial District – Shawnee; 10th Judicial District – Johnson; 18th Judicial District – Sedgwick; and 29th Judicial District – Wyandotte.  *See*  https://kscourts.gov/About-the-Courts/District-Courts (last visited Dec. 15, 2025).

'involve the prosecutor's role as advocate . . . rather than his [or her] role as administrator or investigative officer . . . .' " *Id.* (quoting *Imbler*, 424 U.S. at 491 (citation and internal quotation marks omitted)).  Plaintiff's claims against the state prosecutor are subject to dismissal.

### B.  Defense Counsel

Plaintiff names his retained counsel and his public defender as defendants.  Plaintiff has not shown that his state court defense attorneys were acting under color of state law as required under § 1983.  *See Polk Cty. v. Dodson*, 454 U.S. 312, 318–19, 321–23 (1981) (assigned public defender is ordinarily not considered a state actor because their conduct as legal advocates is controlled by professional standards independent of the administrative direction of a supervisor); *see also Vermont v. Brillon*, 556 U.S. 81, 91 (2009); *Dunn v. Harper County*, 520 Fed. Appx. 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. Apr. 5, 2013) ("[I]t is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing traditional functions as counsel to a criminal defendant." (citations omitted)).  A criminal defense attorney does not act under color of state even when the representation was inadequate.  *Briscoe v. LaHue*, 460 U.S. 325, 330 n.6 (1983).  Plaintiff's claims against his defense attorneys are subject to dismissal for failure to state a claim.

### C.  Police Departments

Plaintiff names the "Johnson County Police Department" and the "Shawnee County Police Department" as defendants.  Police departments are not suable entities under § 1983.  Plaintiff's claims against any police departments would be subject to dismissal, as "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'"  *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D. N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. March 12,

1992)).  This Court has held that municipal police departments are subunits of city government and not legal entities subject to suit. *Roberts v. Unknown Wichita Police Officers*, 2019 WL 1790050, at *2 (D. Kan. April 24, 2019) (citing *Schwab v. Kansas*, 2017 WL 2831508, at *13 (D. Kan. June 30, 2017) (dismissing Riley County Police Department); *Neighbors v. Lawrence Police Dep't*, 2016 WL 3685355, at *6 (D. Kan. July 12, 2016); *Ward v. Lenexa, Kansas Police Dep't*, 2014 WL 1775612, at *4 (D. Kan. May 5, 2014)); *see also See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("City of Denver Police Department" not "separate suable entity").

Furthermore, Johnson County and Shawnee County do not have police departments.  Even if Plaintiff were to name the proper sheriff's departments as defendants, those departments are not proper defendants.  Any claim against a sheriff's department "is directed against the wrong defendant, as the Board of County Commissioners of [Johnson] County is the appropriate defendant for claims against any of its subunits." *Brown v. Sedgwick Cty. Sheriff's Office*, 513 F. App'x 706, 707–08 (10th Cir. 2013) (unpublished) (citing  *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311, 316 (1985) (noting "line of Kansas cases which holds that subordinate government agencies do not have the capacity to sue or be sued in the absence of statute"); Kan. Stat. Ann. § 19–105 (2012)).  Kansas statutory law provides that "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____;' . . .."  K.S.A. § 19-105.

Plaintiff has not alleged sufficient facts to show a municipal policy causally connected to a constitutional violation.  *See Brown*, 513 F. App'x  at 708. To impose § 1983 liability on the county and its officials for acts taken by its employee, a plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation.  *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313,

1318 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978)).  The Supreme Court explained that in *Monell* they decided "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989).  Plaintiff has pointed to no policy or deficiency in the training program and no causal link between any such inadequacy and the allegedly unconstitutional acts of staff.

### D.  State District Court

Plaintiff names the state district court as a defendant.  The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)).  Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

The bar also applies when the entity is an arm or instrumentality of a state. *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000).  In determining whether an entity is an instrumentality or arm of the state for purposes of Eleventh Amendment immunity, the Tenth Circuit has established a two-part inquiry, requiring an examination of:  (1) "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law

and the extent of guidance and control exercised by the state," and (2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 974 (10th Cir. 1997) (citations omitted). "The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury." *Id*. (citations omitted).

Kansas state law clearly characterizes the district courts as arms of the state government—part of a unified judicial branch along with the Kansas Supreme Court and Kansas Court of Appeals. *Wilkins v. Skiles*, No. 02–3190, 2005 WL 627962, at *4 (D. Kan. March 4, 2005); *see generally*, KAN. CONST. art 3. The legislature defines "state agency," for purposes of the state workers' compensation fund, as "the state, or any department or agency of the state, but not including . . . the district court with regard to district court officers or employees whose total salary is payable by counties." K.S.A. 44–575(a). The only court personnel who are not included in the judicial personnel pay system, and are instead paid by the county, are county auditors, coroners, court trustees and personnel in each trustee's office, and personnel performing services in adult or juvenile detention or correctional facilities. K.S.A. 20–162(a), (b). Plaintiff's claims against the state court are subject to dismissal.

### E. Detective

Plaintiff alleges that Detective Tom Dyche was employed by the Johnson County Police Department. (Doc. 8, at 4.) As mentioned above, counties do not have police departments. Plaintiff allege that he told Dyche his real date of birth when Dyche came to the jail in February 2008 to conduct mouth swabs for DNA. *Id*. at 11. Plaintiff alleges that Dyche "failed to process this info." *Id*.

The Tenth Circuit has held that "[a]n investigator who prepares a criminal complaint and seeks an arrest warrant is therefore entitled to absolute immunity." *Joseph v. Shepherd*, 211 F. App'x 692, 697 (10th Cir. 2006) (citing *Roberts v. Kling*, 144 F.3d 710, 711 (10th Cir. 1998)). "[P]rosecutorial immunity extends to certain agents of the prosecutor when they are engaged in performing tasks that are inherently prosecutorial in nature." *Id.* Immunity is determined by "the nature of the function [the defendant] performed, not the identity of the actor who performed it." *Id.* (citing *Perez v. Ellington*, 421 F.3d 1128, 1133 (10th Cir. 2005)).

### E. Probation Officer/Office

Plaintiff alleges that Liz Grace-Meli was Plaintiff's probation officer at the time and was employed by the Johnson County District Court as a probation officer. (Doc. 8, at 4.) Plaintiff alleges that Grace-Meli failed to disclose the discrepancy about Plaintiff's age. *Id.* at 11. Plaintiff alleges that the Johnson County Probation Office employed Grace-Meli. *Id.* at 12.

"[P]robation officers are protected by absolute immunity if 'they are performing a narrowly defined judicial, executive, or legislative function.'" *Daniels v. USAO UT Dist.*, 2023 WL 4115986, at *2 (10th Cir. 2023) (unpublished) (quoting *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 347 (10th Cir. 1986) (citation omitted)). Although Plaintiff's allegations are sparse, "they appear to be related to activities 'intimately associated with the judicial phase of the criminal process' and are, therefore, protected by immunity." *Id.* (citation omitted); *see also Steward v. Chandler*, 2024 WL 1282770, at *3 (D. N.M. 2024) ("[b]ecause of the close working relationship between the probation officer and the sentencing court, the probation officer may communicate *ex parte* with the district court . . . and is entitled to absolute immunity from suit in the performance of his or her judicially-related functions.") (citing *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998)); *McDermott v. Smith*, 2023 WL 3620739, at *2 (E.D. Okla. 2023) (finding that state

probation officers are cloaked with absolute judicial immunity when performing judicially related functions, and stating that this is because "'[p]robation officers are people with whom the judges may properly confer ex parte in connection with decisions based on probation reports—the same kind of conference as might be done with an elbow law clerk.'") (citations omitted).  Plaintiff's claims against his probation officer are subject to dismissal.

### 2.  Malicious Prosecution

It appears that Plaintiff may be asserting a claim for malicious prosecution.  "To determine whether a claim is for malicious prosecution or false imprisonment, the Tenth Circuit looks to whether the alleged detention occurred before or after the institution of legal process."  *McIntyre v. Unified Gov't of Wyandotte Cty. and Kansas City, Kansas*, 2020 WL 1028303, at *7  (D. Kan. March 3, 2020) (citing *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014)).  "If plaintiff's detention occurred before he received legal process, he can assert a claim for false imprisonment."  *Id*. (citing *see Wallace v. Kato*, 549 U.S. 384, 389 (2007) (false imprisonment claim where defendants did not have warrant for plaintiff's arrest)).

A § 1983 malicious prosecution claim includes five elements:  "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff*;* (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages."  *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis removed) (citation omitted).  The Supreme Court has clarified that "a criminal prosecution terminates favorably, for the purposes of a § 1983 malicious prosecution claim, when the prosecution ends without a conviction."  *Id*. at 1311 (citing *Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 1335 (2022)).

Plaintiff's state criminal case was filed on November 6, 2007. *See State v. Rodriguez*, Case No. 07CR02866 (District Court of Johnson County, Kansas). The docket reflects that bail was posted on February 8, 2008. *See id*. On April 28, 2008, Plaintiff entered a guilty plea, tested positive on a urinalysis, and bond was revoked. *Id*. An entry on May 7, 2008, reflects that bond was reinstated and Plaintiff was ordered to enter "ASSC of HOPE HARBOR TREATMENT." *Id*. On July 3, 2008, Plaintiff was sentenced to KDOC custody for a period of 32 months, with probation granted for 36 months, and Plaintiff to serve 10 days of "Shock Time." *Id*. Plaintiff's case was processed to community corrections on his probation order. *Id*. A motion to revoke probation was filed on November 19, 2008. *Id*. On December 23, 2008, Plaintiff failed a urinalysis and was placed on house arrest. *Id*. Plaintiff pleaded guilty to the probation violation on February 5, 2009, and was taken into custody to serve his sentence. A transport order was entered on March 25, 2009. *Id*. Plaintiff's motion to vacate his sentence for lack of subject matter jurisdiction was filed on August 6, 2024. *Id*. Plaintiff's age-related documents were filed on August 14, 2024. *Id*. In *State v. Villanueva*, Case No. 11CR001404, Plaintiff was found guilty of various offenses committed on November 6, 2011. *See State v. Villanueva*, Case No. 11CR001404 (District Court of Wyandotte County, Kansas) (filed November 7, 2011).

In *Jordan v. New York*, the plaintiff was prosecuted as an adult, and it was later determined that he was actually a juvenile when he was arrested. *See Jordan v. New York*, 343 F. Supp. 2d 199, 201 (W.D.N.Y. 2004). After the plaintiff served his sentence, his conviction was vacated because the court lacked jurisdiction over him. *Id*. Plaintiff then sought damages for his wrongful imprisonment. *Id*. The court noted that "a claim based on a theory of malicious prosecution would not be time-barred, since such a cause of action accrues when a criminal prosecution terminates in plaintiff's favor." *Id*. at 203.

The court in *Jordan* noted similar deficiencies with named defendants as those set forth above by this Court, but declined to allow the plaintiff to amend to add a proper defendant because "plaintiff cannot make out a viable claim against anyone." *Id*. (citation omitted).  The court found that it did not appear from the complaint "that anyone involved in the relevant events was aware at the time of plaintiff's true age." *Id*.

In this case, Plaintiff claims that he made others aware of his true age.  The Court is unable to determine whether Plaintiff has stated a viable claim that warrants allowing him to file another amended complaint to name a proper defendant.  Therefore, the Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the Johnson County District Attorney's Office ("JCDAO Officials").  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate JCDAO Officials to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1)    The JCDAO Officials shall submit the *Martinez* Report by January 30, 2026.  Upon the filing of that Report, the Court will screen Plaintiff's Amended Complaint.

(2)    JCDAO Officials are directed to undertake a review of the subject matter of the Amended Complaint:

a.    To ascertain the facts and circumstances;

b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(3)      Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the JCADP Officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The JCDAO Officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4)      Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included. The JCDAO Officials shall redact and/or mute audio for any personal identifiers included in  any video or recording submitted.

(5)      Authorization is granted to the JCDAO Officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)      No motion or other document addressed to the Amended Complaint shall be filed until the Court has reviewed the *Martinez* Report and entered an order screening the Amended Complaint.

(7)      Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended

Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the Johnson County District Attorney as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the Johnson County District Attorney may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff and to the Johnson County District Attorney.

**IT IS SO ORDERED**.

**Dated December 16, 2025, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**