**FILED**
**U.S. District Court**
**District of Kansas**
06/25/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

HUGO A. VILLANUEVA,

     **Plaintiff,**

     v.                    **CASE NO. 25-3163-JWL**

JOHNSON COUNTY DISTRICT
ATTORNEY'S OFFICE, et al.,

     **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis. On October 8, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 6) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC. Plaintiff was also given the opportunity to file an amended complaint to cure the deficiencies. Plaintiff filed an Amended Complaint (Doc. 8), and on December 16, 2025, the Court entered a Memorandum and Order (Doc. 9) ("M&O") screening Plaintiff's Amended Complaint.

The Court found in the M&O the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of the Johnson County District Attorney's Office ("JCDAO Officials"). *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the JCDAO Officials to prepare and file a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 9, at 11.) The *Martinez* Report (Doc. 14) (the "Report") has now been filed. The Court's screening standards are set forth in the MOSC.

1

## I. Nature of the Matter before the Court

Plaintiff's original Complaint alleged that he was charged as an adult in his state criminal case. (Doc. 1, at 2.) Plaintiff alleged that he did not commit the crime, and Johnson County and the State of Kansas did not have jurisdiction to prosecute and convict him. *Id*. Plaintiff alleged that he was sent to prison as a child and has suffered from horrible violence resulting in irreversible psychological damage and severe PTSD. *Id*. In his original Complaint, Plaintiff named the Johnson County District Attorney's Office and the State of Kansas as defendants, and sought $1,000,000,000,000 in damages. *Id*. at 7.

The Court advised Plaintiff in the MOSC that if he is asserting an Eighth Amendment claim based on his conditions of confinement while in the custody of the Kansas Department of Corrections ("KDOC") serving his sentence in his 2007 state criminal case, the claims appear to be barred by the applicable statute of limitations and he has failed to name any KDOC staff or officials as defendants. The Court also advised Plaintiff in the MOSC that his only named defendants in his original complaint—the Johnson County District Attorney's Office and the State of Kansas—are entitled to Eleventh Amendment immunity from his claim for damages.

In his Amended Complaint, Plaintiff continues to allege that he was charged as an adult for a crime he did not commit and that due to the incompetent attorneys, court, and prosecutorial errors, his protections and rights as a juvenile were violated. (Doc. 8, at 2.)

Plaintiff's Amended Complaint names the following defendants: Phil G. Stein, Prosecuting Attorney; Christopher Yotz, Retained Attorney; Johnson County Police Department; Shawnee County Police Department; Karen Ebmeier, Johnson County Public Defender; Johnson County District Court; Tom Dyche, Detective; Liz Grace-Meli, Probation Officer; and the Johnson County Probation Office. Plaintiff seeks $1,000,000,000,000 in damages. *Id*. at 16. Plaintiff

attaches over 300 pages of exhibits to his Amended Complaint.  (Doc. 8–1.)

## II.  The Report

The Report provides that:

> Here, the records indicate that Plaintiff, who was represented by counsel at every step, never informed the court or the prosecution of his true date of birth until his counsel filed age-related documents in August 2024. Plaintiff provided a false name and date of birth to law enforcement upon his initial arrest and, while Plaintiff, through counsel, corrected his name during some of the proceedings in the underlying criminal case, it was not until over a decade later that the court and the prosecution were made aware of the fact that Plaintiff was a minor at the time the crime was committed. (Ex. 14, Motion to Vacate Judgment; *see also* Docket, Johnson County Case). The State did not oppose Plaintiff's motion to vacate the judgment and agreed that it was appropriate. (Ex. 15, December 16, 2024, Order, ¶ 7). Moreover, the State had the opportunity to charge Plaintiff again as a juvenile once the conviction had been vacated, and once corroborating evidence had been provided of Plaintiff's true name and date of birth, but exercised prosecutorial discretion on account of Plaintiff's time served. (Affidavit of District Attorney Steve Howe, ¶ 36, Ex. 4).
>
> Even if the argument about Plaintiff's true age had been raised during the pendency of the underlying criminal action in the 2007 Johnson County Case, the outcome would have been the same. Due to the seriousness of the crime of aggravated battery (and given that the victim received 13 stab wounds to his head, neck, and hip), and that no facility or program could have rehabilitated Plaintiff in the [redacted] days between the time of the crime and Plaintiff's eighteenth birthday, the prosecutor would have filed a motion requesting to prosecute Plaintiff as an adult, as authorized by K.S.A. 38-2347. (Ex. 4, ¶ 34). Weighing the factors outlined in K.S.A. 38-2347(d), the evidence pointed strongly in favor of waiver of Plaintiff's juvenile status, and it is very likely that the court would have granted the State's motion and authorized prosecution of Plaintiff as an adult. (Ex. 4, ¶ 35).
>
> Additionally, at no time during the prosecution of the Johnson County Case was Plaintiff a minor. He was an eighteen-year-old adult who was represented by an attorney. Plaintiff had numerous opportunities to provide truthful and accurate information about his name, date of birth, and Social Security number. Because he invoked his constitutional right to counsel, the prosecution had no choice but to rely on Plaintiff to come forward with this information and proof of the same. But he failed to do so.

(Doc. 14, at 9–10.)

## III.  DISCUSSION

### A.  Count I

As Count I of his Amended Complaint, Plaintiff alleges a due process violation based on the state court's lack of subject matter jurisdiction in his state criminal Case No. 07CR2866. (Doc. 8, at 6.)  Plaintiff claims that the court failed to protect Plaintiff's rights.  *Id.*  Plaintiff alleges that he explained his true name and age to two different judges presiding over the case since September 30, 2007.  *Id.* at 7.

#### 1.  Johnson County District Court

Plaintiff states that "the court" failed to protect his rights, and he has named the Johnson County District Court as a defendant.  The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

The bar also applies when the entity is an arm or instrumentality of a state.  *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000).  In determining whether an entity is an instrumentality or arm of the state for purposes of Eleventh Amendment immunity, the Tenth

4

Circuit has established a two-part inquiry, requiring an examination of: (1) "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state," and (2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 974 (10th Cir. 1997) (citations omitted). "The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury." *Id*. (citations omitted).

Kansas state law clearly characterizes the district courts as arms of the state government—part of a unified judicial branch along with the Kansas Supreme Court and Kansas Court of Appeals. *Wilkins v. Skiles*, No. 02–3190, 2005 WL 627962, at *4 (D. Kan. March 4, 2005); *see generally*, KAN. CONST. art 3. The legislature defines "state agency," for purposes of the state workers' compensation fund, as "the state, or any department or agency of the state, but not including . . . the district court with regard to district court officers or employees whose total salary is payable by counties." K.S.A. 44–575(a). The only court personnel who are not included in the judicial personnel pay system, and are instead paid by the county, are county auditors, coroners, court trustees and personnel in each trustee's office, and personnel performing services in adult or juvenile detention or correctional facilities. K.S.A. 20–162(a), (b). Plaintiff should show good cause why his claims against the Johnson County District Court should not be dismissed.

### 2. Supporting Facts

Plaintiff also fails to point to any supporting facts for his allegation that he told two judges his real age, and instead states "see attachments." (Doc. 8, at 6.) The Report includes the transcript from the April 28, 2008 proceedings where Plaintiff waived his preliminary hearing and entered a guilty plea. (Doc. 14–8.) The transcript reflects that Plaintiff's counsel notified the court that

5

Plaintiff's real name was Hugo Villanueva. *Id*. at 3. The transcript does not reflect that the state court was made aware of Plaintiff's actual date of birth. *Id*. Likewise, the transcript from the May 7, 2008 bond hearing, the July 3, 2008 sentencing transcript, and the March 5, 2009 transcript from a hearing to reinstate probation, fail to reflect that the state court was made aware of Plaintiff's actual date of birth. (Docs. 14–9, 14–10, 14–13.) Plaintiff and his counsel appeared at all four proceedings. *Id*. At the March 5, 2009 hearing following revocation of his probation, Plaintiff was referred to as "Mr. Rodriguez" without objection. (Doc. 14–13.) Although Plaintiff's counsel states "Judge, he's 19-years-old," no one addresses the fact that this would have rendered him 17-years-old at the time he committed the crime. *Id*. at 5–6 (also stating "[a]t 19 years old, 32 months is a long time for him to do" and "[h]e is 19-years-old"). The state court denied the motion to reinstate probation at the hearing and ordered Plaintiff to serve his term. *Id*. at 8.

### B. Count II

As Count II, Plaintiff alleges a violation of K.S.A. § 38-2347, citing *State v. Mayfield*, 241 Kan. 555, 561 (1987). (Doc. 8, at 6.) Plaintiff alleges that the state prosecutor (Phil G. Stein) failed to protect Plaintiff's rights pursuant to *State v. Breedlove* and *State v. Mayfield*, by continuing to prosecute Plaintiff as an adult. *Id*. at 7. Plaintiff also claims this was an "illegal prosecution." *Id*. at 8.

#### 1. Kansas Statutes, *Breedlove*, and *Mayfield*

Plaintiff cites to *Breedlove*, *Mayfield*, K.S.A 38-2302, and K.S.A. 38-2347 as support for his claims. K.S.A. 38-2302 is titled "Definitions" and provides definitions for terms, including "juvenile" and "juvenile offender." *See* K.S.A. 38-2302. K.S.A. 38-2347 sets forth the procedure for prosecuting a juvenile as an adult. *See* K.S.A. 38-2347. Neither statute provides for a private cause of action.

The Kansas Supreme Court in *Breedlove* found that "[a]fter a review of Kansas statutes and case law, the *Mayfield* court concluded that the district court lacked jurisdiction to accept the theft by deception guilty plea from a defendant who was a juvenile when the crime occurred." *State v. Breedlove*, 285 Kan. 1006, 1012 (2008) (citing *State v. Mayfield*, 241 Kan. 555, 561, 738 P.2d 861 (1987)). The court found that "*Mayfield* clearly demands reversal of the convictions because there was never any jurisdiction for the district court to adjudicate Breedlove." *Id*. at 1013 (citations omitted). Although these cases provide support for vacating his conviction based on lack of jurisdiction, he has already received that relief in state court. Plaintiff has not indicated how these cases or statutes provide him with a cause of action in this Court. Plaintiff should show good cause why any claim he is asserting based on the Kansas statutes or the *Breedlove* and *Mayfield* decisions should not be dismissed for failure to state a claim.

### 2. Illegal Prosecution

Plaintiff also claims this was an "illegal prosecution." The Court found in the M&O that Plaintiff may be asserting a claim for malicious prosecution. A § 1983 malicious prosecution claim includes five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff*;* (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis removed) (citation omitted). The Supreme Court has clarified that "a criminal prosecution terminates favorably, for the purposes of a § 1983 malicious prosecution claim, when the prosecution ends without a conviction." *Id*. at 1311 (citing *Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 1335 (2022)).

7

"A plaintiff can establish the malice element of a malicious prosecution claim by showing that the defendant's conduct was either intentional or reckless." *Coones v. Bd. of Cnty. Comm'rs. Of United Gov't of Wyandotte Cnty./Kansas City*, 166 F.4th 1, 33 (10th Cir. 2026) (citations omitted).  In *Jordan v. New York*, the plaintiff was prosecuted as an adult, and it was later determined that he was actually a juvenile when he was arrested.  *See Jordan v. New York*, 343 F. Supp. 2d 199, 201 (W.D.N.Y. 2004).  After the plaintiff served his sentence, his conviction was vacated because the court lacked jurisdiction over him.  *Id*.  Plaintiff then sought damages for his wrongful imprisonment.  *Id*.  The court noted that "a claim based on a theory of malicious prosecution would not be time-barred, since such a cause of action accrues when a criminal prosecution terminates in plaintiff's favor."  *Id*. at 203.  The court in *Jordan* declined to allow the plaintiff to amend to add a proper defendant because "plaintiff cannot make out a viable claim against anyone."  *Id*. (citation omitted).  The court found that it did not appear from the complaint "that anyone involved in the relevant events was aware at the time of plaintiff's true age."  *Id*.

Plaintiff's case is distinguishable, because he claims that he told the prosector and the detective his real age and date of birth.  The Report provides that Plaintiff did not tell the prosecutor his true date of birth until his counsel filed age-related documents in August 2024.  However, the Report and Plaintiff's Amended Complaint include Detective Dyche's narrative that indicated that Plaintiff gave the detective his true name and date of birth, and also indicated that it was submitted to the Johnson County District Attorney's office on February 8, 2008.  (Doc. 8–1, at 274; Doc. 14–3, at 2.).  The Report includes the District Attorney's affidavit declaring that the narrative was scanned into the Johnson County District Attorney's Office file management system on February 11, 2008.  (Doc. 14–4, at 2.)  The affidavit indicates that the prosecutor could not seek additional information from Plaintiff because he invoked his right to counsel.  *Id*.

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). "Courts may use a *Martinez* Report to clarify the complaint's factual allegations and assess their frivolity." *Martin v. v. Schnurr*, 2026 WL 1194984, at *4 (10th Cir. 2026). However, the Report may not be used "to resolve . . . a [bona fide factual] dispute[.]" *Id*. (citation omitted). Therefore, the Court finds that Plaintiff's malicious prosecution claims against Prosecutor Phil G. Stein and Detective Tom Dyche survive screening.

### C. Count III

As Count III, Plaintiff alleges "constitutional right to life, freedom from cruel and unusual punishment, fundamental fairness, due process, and equal protections."   (Doc. 8, at 15) (punctuation added). He claims that the state court, prosecutors, and Mr. Yotz and Ms. Karen Ebmeier (Plaintiff's attorneys), "all failed to protect all [his] juvenile right under law according to *State v. Breedlove*, also *State v. Mayfield*, resulting in later imprisonment." *Id*.  Plaintiff claims that he told his attorney his real name and age, and Mr. Yotz failed to protect his rights. *Id*. at 8. Plaintiff claims this is a violation of K.S.A. 38-2302. *Id*.

#### 1.  K.S.A. 38-2302, *Breedlove*, and *Mayfield*

As set forth above, Plaintiff has not indicated how these cases or statutes provide him with a cause of action in this Court.

#### 2.  Cruel and Unusual Punishment, the Right to Life, Fundamental Fairness, and Equal Protection

Plaintiff fails to provide any factual support for any claims based on cruel and unusual punishment, the right to life, fundamental fairness, or equal protection.  He merely lists the claims without elaboration.  A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935

9

F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted). Plaintiff should show good cause why any claim based on cruel and unusual punishment, the right to life, fundamental fairness, or equal protection should not be dismissed for failure to state a claim.

### 3. Due Process

Plaintiff alleges a due process violation. It appears that Plaintiff may be basing his due process claim on the failure to provide information regarding his real date of birth. The Tenth Circuit has held that:

> A *Brady* violation occurs when (1) the government—through a prosecutor, an investigator, a law enforcement officer, or some other "arm[ ] of the state"—suppresses evidence; (2) the evidence is favorable to the accused; and (3) the evidence is material to the defense. *Smith v. Sec. of N.M. Dep't of Corr.*, 50 F.3d 801, 824–27 (10th Cir. 1995). And civil liability for a *Brady* violation may arise when police officers or other government employees suppress favorable, material evidence either "knowingly or with reckless disregard for the truth." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

10

*Coones v. Bd. of Cnty. Comm'rs. Of United Gov't of Wyandotte Cnty./Kansas City*, 166 F.4th 1, 18 (10th Cir. 2026). Any due process claim may not be based on mere negligence, and must include a showing that the defendant acted with deliberate or reckless intent. *See id.* at 21–22; *see also Johnson v. City of Cheyenne*, 99 F.4th 1206, 1225 (10th Cir. 2024) (noting that liability for this type of claim requires "a mental state surpassing negligence—that is, acting at least knowingly or recklessly"); *Bledsoe v. Carreno*, 53 F.4th 589, 612 (10th Cir. 2022).

"Furthermore, a defendant is not denied due process by the government's nondisclosure of evidence if the defendant knew of the evidence anyway." *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) (citing *Spears v. Mullin,* 343 F.3d 1215, 1256 (10th Cir.2003) ("[T]here can be no suppression by the state of evidence already known by and available to the defendant prior to trial.") (brackets and internal quotation marks omitted); *United States v. Quintanilla,* 193 F.3d 1139, 1149 (10th Cir.1999) ("If a defendant already has a particular piece of evidence, the prosecution's disclosure of that evidence is considered cumulative, rendering the suppressed evidence immaterial."); *Coe,* 161 F.3d at 344 (no *Brady* violation is possible when defendant "knew or should have known the essential facts permitting him to take advantage of any exculpatory information" or when the evidence is available to him from another source, such as a witness "to whom he had as much access as the police." (internal quotation marks omitted))).

The evidence that Plaintiff alleges Dyche "failed to process" came from Plaintiff. Plaintiff was clearly aware of his true name and date of birth when he provided it to Detective Dyche. Plaintiff also alleges that he told his defense attorney his real name and date of birth. *See* Doc. 8, at 8 ("On February 20, 2008 my family retained attorney Christopher Yotz again I told Mr. Yotz my real name & age . . ."). Furthermore, Detective Dyche's narrative that documented his discussion with Plaintiff regarding Plaintiff's real name and date of birth provides that it "was

11

submitted to the Johnson County DA's Office" on February 8, 2008.  (Doc. 8–1, at 274; Doc. 14–

3, at 2.)   The Report includes District Attorney Howe's affidavit,  declaring that:

> A Narrative from Shawnee Police Department Detective Tom Dyche was scanned into the Johnson County District Attorney's Office file management system on February 11, 2008.  In 2008, the Johnson County District Attorney's Office used a software program called Justice Information Management System ("JIMS") for document management.   The JIMS program was also used to manage discovery and document productions.  The JIMS program had a function where documents would be automatically produced to defense counsel.  According to my review of this file, Detective Dyche's Narrative was produced as part of a supplemental document production in the course of discovery, and such document production was received by defense counsel on March 12, 2008. . . . Detective Dyche's Narrative indicates that during his interaction with Plaintiff on February 6, 2008, Plaintiff had invoked his constitutional right to counsel several months prior.  Once a criminal defendant invokes their constitutional right to counsel, the State is prohibited from questioning or speaking with the defendant about their case or the charges against them.  Therefore, the State could not have sought any further information from Plaintiff about his true name and date of birth, unless Plaintiff or his counsel came forward with that information and corroborating evidence. I have reviewed the transcripts from the sentencing hearing and the hearing on the motion to reinstate probation.  The record from both hearings reflect that neither Plaintiff nor his counsel ever informed the Court that Plaintiff was a minor at the time the crime occurred.  Plaintiff was ultimately sentenced to 32 months' imprisonment and served his time.   In 2019, Plaintiff was charged with capital murder in Wyandotte County, Kansas.  The first time that the Johnson County District Attorney's Office was made aware of any inquiry about Case No. 07CR2866 was when Plaintiff's defense team in the Wyandotte County capital murder case (Case No. 19CR1144) filed a request for a copy of the probable cause affidavit associated with Case No. 07CR2866.  The first time that the Johnson County District Attorney's Office became aware that Plaintiff was a minor at the time the 2007 crime occurred was when Plaintiff's current defense team filed a Motion to Vacate Judgment of Conviction for Lack of Subject-Matter Jurisdiction on August 2, 2024. Neither Plaintiff nor his counsel provided the State with any documentation to confirm his identity, such as a birth certificate, driver's license, or passport, until August 14, 2024, when Plaintiff's defense team filed age-related documentation to accompany Plaintiff's motion to vacate the 2008 conviction.  The filing of the age-related documentation on

> August 14, 2024, was the first time that the State was provided any documents from Plaintiff or his counsel that would corroborate his true name and date of birth.

(Doc. 14–4, at 2–4.)  Similar evidence was presented to the court in *Erickson*, where the Tenth Circuit noted that:

> the prosecutor represented to the district court that Exhibit 4–B was among documents in the open-file discovery available to Defendants before trial. Such representations are entitled to almost as much weight as an affidavit. As we have explained:
>
> > To reject the [federal prosecutor]'s representation is not only to ignore "the presumption of regularity" … but to disregard the [prosecutor]'s duty as an attorney. "Attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath."

*Erickson*, 561 F.3d at 1165 (citing *United States v. Deberry,* 430 F.3d 1294, 1300 (10th Cir.2005) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 486, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978))).

Plaintiff has not shown that the prosecutor or Detective Dyche failed to provide information that was not in Plaintiff's and his attorney's possession.  Plaintiff should show good cause why any due process claim based on a *Brady* violation should not be dismissed for failure to state a claim.

### 4.  The State Court and Defense Attorneys

As set forth above, the "state court" is not a proper defendant.  Plaintiff also names as defendants his state court defense attorneys—Christopher Yotz and Karen Ebmeier.  The Court found in the M&O that Plaintiff has not shown that his defense attorneys were acting under color of state law as required under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 318–19, 321–23 (1981) (assigned public defender is ordinarily not considered a state actor because their conduct as legal advocates is controlled by professional standards independent of the administrative

direction of a supervisor); *see also Vermont v. Brillon*, 556 U.S. 81, 91 (2009); *Dunn v. Harper County*, 520 Fed. Appx. 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. Apr. 5, 2013) ("[I]t is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing traditional functions as counsel to a criminal defendant." (citations omitted)).  A criminal defense attorney does not act under color of state law even when the representation was inadequate.  *Briscoe v. LaHue*, 460 U.S. 325, 330 n.6 (1983).

Plaintiff has not alleged legal malpractice or negligence, and claims under § 1983 may not be predicated on mere negligence.  *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).  It is well-settled that state law violations are not grounds for relief under § 1983. "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted).   Legal malpractice is a state-law claim and does not supply grounds for a constitutional cause of action. *See Wallin v. Arapahoe Cnty. Det. Facility*, 244 F. App'x 214, 218 (10th Cir. 2007) (unpublished) (stating that "a legal malpractice claim is a state-law tort claim, not a § 1983 claim" and the plaintiff did not plead a legal malpractice claim under state law) (citation omitted).  "[I]f his intent was to file a legal malpractice claim against the defendants rather than the constitutional claims he did assert, he should have, in the absence of diversity jurisdiction, filed that claim in an action in state court . . .." *Id*.

Plaintiff should show good cause why any claim under § 1983 against his defense attorney should not be dismissed for failure to state a claim.

### D. Count IV

As Count IV, Plaintiff alleges that Karen Ebmeier, his public defender, represented him during the revocation proceedings and allowed his adult prosecution to continue.  (Doc. 8, at 9.) Plaintiff alleges that she announced to the state court that Plaintiff was 19 years old, which was his

correct age at the time. Plaintiff claims that therefore she must have used his real date of birth, and that "despite knowing [his] correct age . . . did not connect that to the issue of [his] juvenile status at the time of the alleged crime." *Id*.

Plaintiff's defense counsel is not a state actor as required by § 1983. Although Plaintiff alleges that she represented him, he fails to state what constitutional violation he is alleging in Count IV, and appears to be relying on the fact that she did not make the connection that he was a juvenile when he committed the offense. The Court's above reasoning for Count III would also apply to this count. Plaintiff should show good cause why any claim under § 1983 against his defense attorney should not be dismissed for failure to state a claim.

**E. Counts V and VI**

As Court V, Plaintiff alleges that the Johnson County Police Department violated his rights pursuant to K.S.A. 38-2302, *Breedlove*, and *Mayfield*. (Doc. 8, at 10.) Plaintiff alleges that the police department failed to correct the error regarding his age. *Id*. As Count VI, Plaintiff makes the same claim regarding the Shawnee County Police Department. *Id*.

As set forth above, Plaintiff has not indicated how these cases or statutes provide him with a cause of action in this Court. Furthermore, Plaintiff has failed to name a proper defendant in these counts.

Plaintiff names the "Johnson County Police Department" and the "Shawnee County Police Department" as defendants. Police departments are not suable entities under § 1983. Plaintiff's claims against any police departments would be subject to dismissal, as "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'" *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D. N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. March 12,

1992)).  This Court has held that municipal police departments are subunits of city government and not legal entities subject to suit. *Roberts v. Unknown Wichita Police Officers*, 2019 WL 1790050, at *2 (D. Kan. April 24, 2019) (citing *Schwab v. Kansas*, 2017 WL 2831508, at *13 (D. Kan. June 30, 2017) (dismissing Riley County Police Department); *Neighbors v. Lawrence Police Dep't*, 2016 WL 3685355, at *6 (D. Kan. July 12, 2016); *Ward v. Lenexa, Kansas Police Dep't*, 2014 WL 1775612, at *4 (D. Kan. May 5, 2014)); *see also See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("City of Denver Police Department" not "separate suable entity").

Furthermore, Johnson County and Shawnee County do not have police departments.  Even if Plaintiff were to name the proper sheriff's departments as defendants, those departments are not proper defendants.  Any claim against a sheriff's department "is directed against the wrong defendant, as the Board of County Commissioners of [Johnson] County is the appropriate defendant for claims against any of its subunits." *Brown v. Sedgwick Cty. Sheriff's Office*, 513 F. App'x 706, 707–08 (10th Cir. 2013) (unpublished) (citing *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311, 316 (1985) (noting "line of Kansas cases which holds that subordinate government agencies do not have the capacity to sue or be sued in the absence of statute"); Kan. Stat. Ann. § 19–105 (2012)).  Kansas statutory law provides that "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____;' . . .."  K.S.A. § 19-105.

Plaintiff has not alleged sufficient facts to show a municipal policy causally connected to a constitutional violation.  *See Brown*, 513 F. App'x  at 708. To impose § 1983 liability on the county and its officials for acts taken by its employee, a plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation.  *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313,

1318 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978)).  The

Supreme Court explained that in *Monell* they decided "a municipality can be found liable under

§ 1983 only where the municipality itself causes the constitutional violation at issue," and "there

are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability

under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989).  Plaintiff has pointed

to no policy or deficiency in the training program and no causal link between any such inadequacy

and the allegedly unconstitutional acts of staff.  Plaintiff should show good cause why his claims

in Counts V and VI should not be dismissed for failure to state a claim.

### F.  Count VII

As Count VII, Plaintiff alleges that Detective Tom Dyche came to the jail on February 8,

2008, to collect Plaintiff's DNA, and at that time Plaintiff told him his real birthdate and that he

was still underage at the time of the alleged crime.  (Doc. 8, at 11.)  Plaintiff claims that Dyche

failed to process this information to the court in violation of his rights under K.S.A. 38-2302,

*Breedlove*, and *Mayfield*.  *Id.*

As set forth above, Plaintiff has not indicated how these cases or statutes provide him with

a cause of action in this Court.  Furthermore, any due process claim based on a *Brady* violation is

subject to dismissal as set forth in the discussion of Count III above.  However, to the extent that

Plaintiff is alleging a malicious prosecution claim against Detective Dyche, that claim survives

screening for the reasons set forth in the discussion of Count II above.

### G.  Count VIII

As Count VIII, Plaintiff alleges that probation officer Liz Grace-Meli failed to disclose his

age in court, and "she had [his] real name and date of birth."  (Doc. 8, at 11.)   Plaintiff claims she

violated K.S.A. 38-2302, *Breedlove*, and *Mayfield*.  *Id*.

Again, Plaintiff has not indicated how these cases or statutes provide him with a cause of action in this Court.  Plaintiff has failed to point to any supporting facts as to why Grace-Meli had his real name and date of birth or when she failed to disclose it in court.  She is not listed as the pre-sentence investigator in the Pre-Sentence Investigation Report that Plaintiff attached to his Amended Complaint.  (Doc. 8–1, at 61.)  She is merely mentioned in the Motion to Revoke Probation, where it is stated that Plaintiff is "presently being monitored by Intensive Supervision Officer Elizabeth Grace-Meli." *Id*. at 65.  The transcript from Plaintiff's March 5, 2009 hearing on the motion to revoke probation does not reflect that Grace-Meli participated in the hearing. *Id*. at 228–36.

"[P]robation officers are protected by absolute immunity if 'they are performing a narrowly defined judicial, executive, or legislative function.'" *Daniels v. USAO UT Dist.*, 2023 WL 4115986, at *2 (10th Cir. 2023) (unpublished) (quoting *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 347 (10th Cir. 1986) (citation omitted)).  Plaintiff's allegations "appear to be related to activities 'intimately associated with the judicial phase of the criminal process' and are, therefore, protected by immunity." *Id*. (citation omitted); *see also Steward v. Chandler*, 2024 WL 1282770, at *3 (D. N.M. 2024) ("[b]ecause of the close working relationship between the probation officer and the sentencing court, the probation officer may communicate *ex parte* with the district court . . .  and is entitled to absolute immunity from suit in the performance of his or her judicially-related functions.") (citing *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998)); *McDermott v. Smith*, 2023 WL 3620739, at *2 (E.D. Okla. 2023) (finding that state probation officers are cloaked with absolute judicial immunity when performing judicially related functions, and stating that this is because "'[p]robation officers are people with whom the judges may properly confer ex parte in connection with decisions based on probation reports—the same kind of conference as might be

done with an elbow law clerk.'") (citations omitted).  Plaintiff should show good cause why his claims against his probation officer should not be dismissed.

### H.  Count IX

As Count IX, Plaintiff alleges that the Johnson County Probation Office employed Ms. Grace-Meli and failed to identify the age discrepancy in violation of K.S.A. 38-2302, *Breedlove*, and *Mayfield*.  (Doc. 8, at 11.)   As set forth above, Plaintiff has failed to state a cause of action under these cases and statute.  Plaintiff has also failed to state a cause of action against Grace-Meli.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).  A probation office is not a person under § 1983.  *See Mobley v. Guilford Co. Probation*, 2017 WL 1409580, at *2 (M.D. N.C. 2017); *Anderson v. Dauphin Cnty. Adult Probation Office*, 2016 WL 769278, at *5 (M.D. Pa. 2016) (finding probation office is not a "person" amendable to suit under § 1983 and is part of the judiciary which is an arm of the state), *recommendation adopted* 2016 WL 759162, at *1 (M.D. Pa. 2016); *Moriarity v. Superior Court of Marion Cnty.*, 2007 WL 1106135, t *2 (S.D. Ind. 2007) (sating that because the probation office "is an arm of the court, it like the court itself is a state entity and therefore not a 'person' under § 1983").  Plaintiff should show good cause why his claim against the Johnson County Probation Office should not be dismissed for failure to state a claim.

## IV.  Response Required

The Court finds that Plaintiff's malicious prosecution claims against Prosecutor Phil G. Stein and Detective Tom Dyche survive screening and may move forward.  All other claims are

subject to dismissal. Plaintiff must show good cause why all of his claims, with the exception of his malicious prosecution claims, should not be dismissed for the reasons set forth in this Memorandum and Order. The failure to respond by the Court's deadline with result in the dismissal of these claims.

**IT IS THEREFORE ORDERED** that Plaintiff's malicious prosecution claims against Prosecutor Phil G. Stein and Detective Tom Dyche survive screening and may move forward.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **July 27, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's remaining claims should not be dismissed for the reasons set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk is directed to send waivers of service to Defendants Phil G. Stein and Tom Dyche.

**IT IS SO ORDERED**.

**Dated June 25, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
